OPINION *Page 2 
{¶ 1} On November 3, 2006, appellant, John DeCosky, was charged with operating a motor vehicle while under the influence of alcohol in violation of R.C. 4511.191(A)(1)(a) and (d). On December 20, 2006, appellant filed a motion to suppress, claiming an illegal stop and challenging the results of the breath test. A hearing was held on March 13, 2007. By judgment entry filed May 10, 2007, the trial court denied the motion.
 {¶ 2} On June 21, 2007, appellant pled no contest to the R.C.4511.191(A)(1)(d) charge. The (A)(1)(a) charge was dismissed. By judgment entry filed same date, the trial court found appellant guilty, and sentenced him to three days in jail and five years of community control.
 {¶ 3} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 4} "THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS WHEN IT FOUND THAT THERE WAS A REASONABLE AND ARTICUABLE (SIC) SUSPICION FOR THE INVESTIGATIVE STOP AND DETENTION OF THE DEFENDANT-APPELLANT."
 II {¶ 5} "THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS WHEN IT FOUND THAT THE RADIO FREQUENCY INTERFERENCE TEST OF THE BREATH TESTING MACHINE COMPLIED WITH OHIO ADMIN. CODE § 3701-53-04." *Page 3 
 III {¶ 6} "THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS WHEN IT FOUND THAT A COPY OF THE OPERATIONAL MANUAL PROVIDED BY THE BAC DATAMASTER'S MANUFACTURER WAS NOT IN COMPLIANCE WITH THE REQUIREMENTS OF OHIO ADMIN. CODE § 3701-53-01."
 I {¶ 7} Appellant claims the trial court erred in denying his motion to suppress based on the issue of probable cause to stop. We disagree.
 {¶ 8} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. State v. Fanning (1982),1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 485; State v.Guysinger (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v. Williams (1993),86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *Page 4 State v. Curry (1994), 95 Ohio App.3d 93; State v. Claytor (1993),85 Ohio App.3d 623; Guysinger. As the United States Supreme Court held inOrnelas v. U.S. (1996), 116 S.Ct. 1657, 1663, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 {¶ 9} In Terry v. Ohio (1968), 392 U.S. 1, 22, the United States Supreme Court determined that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." However, for the propriety of a brief investigatory stop pursuant to Terry, the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21. Such an investigatory stop "must be viewed in the light of the totality of the surrounding circumstances" presented to the police officer. State v. Freeman (1980), 64 Ohio St.2d 291, paragraph one of the syllabus.
 {¶ 10} Appellant claims his driving did not "escalate to the level of a traffic violation." If anything, appellant argues his driving infractions were de minimus.
 {¶ 11} Ohio State Highway Patrol Trooper Matthew Them testified as follows regarding the driving he witnessed:
 {¶ 12} "A. I was southbound on South Main Street, north on Columbus Road when I observed Mr. DeCosky also southbound on South Main Street. I was following behind him, and as I was following, I observed him drive out of his marked lanes. He was driving left-of-center and through several — kind of straddling several turn lanes. *Page 5 
There was a three-lane and then a left-turn lane, and he was straddling those lanes, going straight through the middle." T. at 6.
 {¶ 13} The trial court reviewed the videotape of the stop and noted the following in its May 10, 2007 judgment entry:
 {¶ 14} "The video shows the left rear tire on the Defendant's vehicle crossing the solid line on the left (east) side of the southbound lane. There is a second solid line marking the west edge of the northbound left turn lane. The left rear tire of the Defendant's vehicle touched, but did not cross the edge line for the northbound lane. The video also shows the Defendant's vehicle continuing straight southbound. At the next intersection, the solid line marking the left edge of the southbound lane veers to the left so there is sufficient width for a left turn lane. There is a solid line that divides the left turn lane from the southbound lane. The Defendant's vehicle straddled the solid line dividing the left turn lane and the southbound lane. There was no indication that the Defendant made any effort to acknowledge that the southbound land veered to the right to make room for the left turn lane."
 {¶ 15} We have also reviewed the videotape and concur with the trial court's analysis. In evaluating probable cause to stop, we have considered the time of day, appellant's good and bad driving, and the de minimus violations. It is clear from the videotape that appellant committed major lane infractions: driving through the intersection in the left turn lane, crossing over the double yellow on the other side of the intersection, and driving on the double yellow line.
 {¶ 16} Upon review, we find these driving errors to be sufficient to support a reasonable suspicion of impaired driving. *Page 6 
 {¶ 17} Assignment of Error I is denied.
 II {¶ 18} Appellant claims the trial court erred in denying his motion to suppress based on the radio frequency interference test, Ohio Adm. Code3701-53-04. We disagree.
 {¶ 19} Ohio Adm. Code 3701-53-04(A) states the following:
 {¶ 20} "A senior operator shall perform an instrument check on approved evidential breath testing instruments and a radio frequency interference (RFI) check no less than once every seven days in accordance with the appropriate instrument checklist for the instrument being used. The instrument check may be performed anytime up to one hundred and ninety-two hours after the last instrument check.
 {¶ 21} "(1) The instrument shall be checked to detect RFI using a hand-held radio normally used by the law enforcement agency. The RFI detector check is valid when the evidential breath testing instrument detects RFI or aborts a subject test. If the RFI detector check is not valid, the instrument shall not be used until the instrument is serviced."
 {¶ 22} Appellant's objections to the test were predicated upon the testimony given during a February 27, 2007 suppression hearing inCity of Mount Vernon v. Nicholas Snell, Mount Vernon Municipal Court Case No. 06TRC-5567. During this hearing, an Ohio State Highway Patrol Trooper testified the radio frequency interference test on the same machine used to test appellant was only tested against his portable radio, and not any other portable radios in the office. See, Supplemental Transcript at 33, 35-36. The BAC DataMaster machine is located within the Knox County Sheriff's *Page 7 
Office, and no portable radios from said office were ever used to test the machine. Id. at 35.
 {¶ 23} During appellant's test, there was no evidence of any other portable radio operating in the testing area other than the Ohio State Highway Patrol radio. Because the Ohio State Highway Patrol's radios were checked against the BAC DataMaster machine, the machine was properly checked:
 {¶ 24} "The evidence is that the Mount Vernon Police and the Knox County Sheriff's Department are on difference (sic) radio frequencies than is the OSHP. The Court after hearing the testimony finds that while the OSHP is converting from one type radio to another type, that both radios use the same radio frequency and so there is at least three (3) different radio frequencies in use at different times in the area of the location of the BAC DataMaster cdm used to conduct the BAC test on the Defendant. The Trooper conducting the radio frequency test did not use a radio that is on either the frequency used by the Mount Vernon Police or the Knox County Sheriff. He only used a radio furnished to him by the OSHP that operates on the OSHP radio frequency. The Court finds that by using only one (1) radio frequency in conducting the radio frequency test, the one used by the OSHP, the Trooper testing the BAC DataMaster cdm machine strictly complied with the ODH regulations as to the radio frequency test requirements." See, Judgment Entry filed May 10, 2007.
 {¶ 25} Upon review, we concur with the trial court's conclusion.
 {¶ 26} Assignment of Error II is denied. *Page 8 
 III {¶ 27} Appellant claims the trial court erred in denying his motion to suppress based on the use of an old operational manual. We disagree.
 {¶ 28} Ohio Adm. Code 3701-53-01(B) states the following:
 {¶ 29} "At least one copy of the written procedure manual required by paragraph (D) of rule 3701-53-06 of the Administrative Code for performing blood, urine, or other bodily substance tests shall be on file in the area where the analytical tests are performed.
 {¶ 30} "In the case of breath tests using an approved evidential breath testing instrument listed in paragraphs (A) and (B) of rule 3701-53-02 of the Administrative Code, the operation manual provided by the instrument's manufacturer shall be on file in the area where the breath tests are performed."
 {¶ 31} After comparing the old versus the new BAC DataMaster manuals, the trial court concluded the differences were minimal and insignificant:
 {¶ 32} "The Court finds that the differences in the two (2) machines are minimal and the differences in the operational manuals are insignificant. The Court finds that the State has substantially complied with the ODH regulations concerning having an operational manual on file. The Defendant presented no evidence to show that he was in any way prejudiced by the State's failure to strictly comply with the requirement to have the operational manual for the BAC DataMaster cdm on file in the area where the analytical tests were performed. State v.Plummer, 22 Ohio St. 3d 490." See, Judgment Entry filed May 10, 2007. *Page 9 
 {¶ 33} The operational manuals were marked as State's Exhibits 1 and 2. We have examined the two manuals and find any additions as "highlighted" are but duplicative references to the instructions given in both or are of abbreviations of the machine. Further, in Section C, "Administering the Subject Test," the additions are essentially redundant given that the trooper was a certified operator.
 {¶ 34} Assignment of Error III is denied.
 {¶ 35} The judgment of the Mount Vernon Municipal Court of Knox County, Ohio is hereby affirmed.
 Farmer, J. Gwin, P.J. and Delaney, J. concur. *Page 10 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Mount Vernon Municipal Court of Knox County, Ohio is affirmed. *Page 1